JOHNSON et al. v. ARROW TRANSFER & STORAGE CO. et al.
—80 S. W. (2d) 842.

Eastern Section.   February 16, 1935.

Petition for Certiorari denied by Supreme Court, April 6, 1935.

Williams & Frierson, of Chattanooga, for appellant.
Noone & Ziegler, of Chattanooga, for appellee.

AILOR, J.   On and prior to May 31, 1933, complainants, A. E. Johnson and A. H. Gould, were partners, doing business in Chattanooga under the trade-name of Chattanooga Beer Distributors. As such partners they had an agency for the distribution of Atlas beer in the Chattanooga trade area, consisting of Hamilton and other adjacent counties in Tennessee.   For considerable time prior to the above date, the authorized representatives of defendant Arrow Transfer & Storage Company, Incorporated, had been endeavoring to obtain a sales agency for said corporation of an acceptable brand of beer.   It appears that, for some business or personal reasons antedating the prohibition era in the state, Mr. Johnson desired to dispose

of the Atlas agency and take on the agency for Cook's beer instead.

At this time it was considered that an agency for an established beer was a valuable asset. Retail dealers and distributors could not obtain sufficient amounts to supply the trade, and the Atlas beer being one of the leading brands in the Chattanooga area, it was highly desirable to the defendants. For some considerable time prior to the date in question, representatives of defendant corporation had endeavored to obtain the agency for Atlas beer, but had been unsuccessful for the reason that complainants already had the agency.

The fact that defendant corporation was very anxious to obtain the sales agency for an established beer was more or less generally known, and was especially known to one Tom Weterford, manager of the Chattanooga office of Dunn & Bradstreet. In fact, he had been trying to aid them in securing such agency as a matter of ac-commodating patrons of business by which he was employed. He also learned that complainants might be interested in disposing of their agency for Atlas beer, and conceived the idea of bringing the complainants and representatives of defendant corporation together. His efforts resulted in the complainants and defendants Paul S. Steward and Theo King being brought together the latter part of May, 1933, possibly May 30th, and this meeting resulted in a contract whereby Arrow Transfer & Storage Company agreed to pay the complainants the sum of $2,000 for their contract to sell Atlas beer in the Chattanooga trading area. This contract is represented by a formal written agreement and certain supplements and modifications which will be noticed particularly. The negotiations preliminary to the written contract were hastily completed, and the written contract was prepared in a hurry, as all parties were anxious to get a binding agreement completed before making a trip to Chicago on May 31, 1933, which was made in an airplane.

The material provisions of the contract are as follows:

"The parties of the first part agree to transfer all of their right, title and interest in and to the franchise or right to sell Atlas Beer in the Chattanooga trading area to the party of the second part for the sum of two thousand ($2,000.00) dollars paid and to be paid as follows, to-wit:

"(a) One thousand ($1,000.00) dollars to be placed in escrow with the cashier of the American Trust and Banking Company, Chattanooga, Tennessee, said sum to be paid to the parties of the first part, on July 15th if they deliver to the party of the second part a letter satisfying it of the succession of representation which parties of the first part now hold with the Atlas Brewing Company.

"(b) One thousand ($1,000.00) dollars in cash to be paid on July 15th, 1933."

There are other provisions of the contract relative to the transfer of the stock on hand, and also a provision to the effect that the money placed in escrow shall be returned, in the event complainants should fail to get a satisfactory letter by July 15th, and also for the repayment of the $1,000 cash, in the event of such failure.

After the written contract had been executed, the complainants and King and Steward representing the defendant corporation proceeded to Chicago by airplane. The trip to Chicago was made on the afternoon of May 31st, after the contract had been executed earlier in the day. The object of this trip was to get a letter from the Atlas Brewing Company approving the new arrangements for handling Atlas beer, and which was to be treated as fulfilling the conditions of the contract. However, for the purpose of further clarifying the true relationship of the parties, complainants prepared a letter as a supplement to same. This letter contains the following provisions:

"In conformance with our written articles of agreement executed this 31st day of May, 1933, and confirming our oral understanding, the undersigned agrees, provided the terms of the written agreement are satisfactorily met, for a consideration of $5 to, on July 15, 1933, transfer whatever interest the undersigned has in and to the sales contract or franchise now enjoyed by them in the sales of Atlas beer in the Chattanooga area.

"This letter, in view of our understanding that we would go into a partnership agreement from June 1st to July 15th, 1933, will clarify the situation and reduce to writing the fact that you are not to have any profits or liabilities out of the operation from June 1st to July 15th, 1933, but that when you conform to the terms of the written contract on the date above specified, our relation terminates, we withdraw from the operation and you gentlemen continue to represent the Atlas Brewing Company."

To the letter was added the following postscript:

"In the event the party of the first part receives and has on hand for distribution products of the F. W. Cook Company, of Evansville, Indiana, prior to July 15, then on such date the Atlas Agency as set forth above shall be transferred to the party of the second part. The party of the second part agrees to pay to the party of the first part twenty cents per case on all Atlas beer sold by the second party from such date to July 15th, 1933."

Upon the arrival of the parties in Chicago, it was decided that Mr. Gould should conduct the negotiations with the representatives of the Atlas Brewing Company for the transfer of the agency to the new organization. Defendants were content to go on an inspection tour of the brewery. On the following day, June 2, 1933, the Atlas Brewing Company gave Mr. Gould a letter confirming the transfer of the sales agency to the complainants and the Arrow Transfer

& Storage Company as a partnership. This letter met the requirements of defendants, and the first $1,000 was paid over upon the strength of it.

Some friction arose about June 21st, when the Atlas Brewing Company learned that complainants were handling Cook's beer. It appears that defendant Theo F. King was in Chicago at the time the friction arose, but it is not shown that he communicated to the Atlas Brewing Company the fact that complainants were handling Cook's beer. But however this may be, he went to the office of the Atlas Company on June 22nd, and completed an arrangement whereby the defendant company was to have the agency immediately, whereas by the terms of their agreement they were not to obtain the benefits of it prior to July 15th. On the same day, June 22nd, the defendant Paul Steward wrote complainants a letter as follows:
"Gentlemen:

"In accordance with conversation today with Mr. Johnson, we agree that when Mr. Stanley, or other authorized representative of the Atlas Brewing Company, visits Chattanooga and approves our succeeding to your distributorship in this territory for the Atlas Brewing Company, such approval to be evidenced by a satisfactory agreement we will then pay you the second $1,000.00, which is provided for in our agreement with you dated May 31st, 1933."

Arrangements were completed whereby defendant company became the agent of Atlas Brewing Company, and it has continued to handle the product of said brewing company from that date to the present, or at least to the time proof was taken in the cause. After the defendant company had been confirmed as the agent of said brewing company, the complainants, on July 17, 1933, made demand for the payment of the unpaid $1,000 provided by the contract.

Payment of the amount was refused, and complainants filed their original bill for the purpose of enforcing payment. Defendant Arrow Transfer & Storage Company filed an answer and cross-bill, denying further liability and seeking a recovery of the amount already paid to complainants.

Upon the trial of the cause, the chancellor dismissed the cross-bill and awarded complainants a recovery of $1,000, and defendant Arrow Transfer & Storage Company has perfected its appeal to this court.

It is insisted on behalf of appellant that the decree should be reversed, for the reason that there was no consideration for the agreement to pay the $2,000; that the complainants had no legal right to sell or assign their purported agency. It is further insisted that complainants have failed to cooperate in contacting customers, and that they fraudulently misrepresented to defendants that the Atlas Brewing Company knew that they were handling another beer. It

further insisted that complainants were never able to complete the agency contract in favor of defendants, and that the defendants procured same through their own efforts; that the agency procured was separate and distinct from that contemplated by the contract sued upon; that the complainants had practiced a fraud upon the Atlas Brewing Company by pretending to have the agency transferred to a partnership which did not exist, and to that extent it came into court with unclean hands, and should be repelled.

We will notice these objections in their order. We cannot agree with the first insistence that complainants had nothing to sell. They were the authorized agents for Atlas beer at the time the contract was made, and had developed a market for it to where it was one of the leading brands in the Chattanooga district. This agency was very much desired by defendant corporation, and was considered by it to have a value of $2,000, if made available to it by July 15, 1933. Its value consisted in an established trade, developed through prior sales and rather extensive advertising. At the time the contract was entered into it was difficult to obtain a supply of popular brands of beer. Defendant agreed to pay the sum stipulated for a privilege which the complainants were then enjoying, and it got all and more than it contracted for. It was not to come into the beneficial use of the contract until July 15th, when as a matter of fact it came into full possession and enjoyment of it on the 22nd or 23rd of June.

It is next insisted that complainants have violated their contract by not cooperating with defendant in contacting customers. This insistence grows out of a claim that complainants did not turn over a complete list of their customers to defendant. And it is not satisfactorily shown that a complete list was so turned over. But this fact appears immaterial, for the reason that it does appear that complainants turned over to defendant its driver who knew all customers running accounts with complainants. It is not shown that any loss was sustained by reason of such alleged failure, and it is apparent that this is not the basis of defendant's refusal to pay.

It is next insisted that complainants fraudulently misrepresented to defendant the fact that the Atlas Brewing Company had been informed of the fact that complainants were handling another brand of beer. It is possible that defendant was not fully informed on this point, and that complainants were not as frank as they should have been relative to this question. However, we do not see where defendant has any complaint for that reason. It did not injure defendant in any way, and such concealment, if any, was from the Atlas Brewing Company. Defendant knew that complainants were planning to take on another and a competing beer agency, and that that fact was the motive actuating them in deciding to dispose of the Atlas agency. It may be readily assumed that complainants

would not have agreed to sell their agency, but for the fact that they were able to procure a different brand of beer to sell. It was apprised of this fact by both the complainants and also by the Cook Brewing Company. It agreed to purchase the agency with full knowledge of this fact, and no injury having been suffered by it on account of same, is in no position to complain.

■ The fourth, fifth, and sixth objections are similar in nature, and raise the question of the failure of complainants to complete delivery of the agency, and the insistence that defendant procured same in a different form through its own efforts. Complainants did, however, procure a letter which was acceptable to defendant as evidence of the completion of the arrangements and upon the basis of which it paid over the first $1,000. Thereafter, on June 22nd, it ratified all steps taken up to that time by writing a second letter and promising to pay the second $1,000 in the event of a confirmation of their agency by the representative of the Atlas Company. This was done, and the defendant has reaped the benefits of the contract, whether they be profit or loss, and it is not in position to now deny its commitments.

The subject-matter of the seventh and last complaint has been substantially dealt with heretofore, and it is not necessary to notice it separately. Complainants practiced no fraud upon defendant; it entered into a lawful contract for a stipulated consideration, and there is no valid reason why it should not be enforced. This is just the ordinary business venture entered into with high hopes for a profitable enterprise. The roseate prospects of May began to fade far too soon to keep defendant satisfied with its bargain. In fact the price of beer dropped the day it took over the agency, and this, no doubt, had something to do with its attitude toward the fulfillment of its obligation.

We think that the chancellor was correct in his findings, and it results that all assignments of error are overruled, and the decree of the lower court affirmed.